# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

In re:

MIRABILIS VENTURES, INC.,
Bankruptcy Case No. 6:08-bk-04327-KSJ
_____/

MIRABILIS VENTURES, INC.

              Plaintiff,

                                 **Case No. 6:09-cv-271-Orl-31GAP-DAB**

v.

                                   **Dispositive Motion**

RACHLIN COHEN HOLTZ, LLP, a
Florida limited liability partnership n/k/a
RACHLIN, LLP; LAURIE S. HOLTZ, an
individual,

              Defendants.
_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON LIABILITY AND DAMAGES

Defendants MarcumRachlin, a division of Marcum LLP, f/k/a Rachlin Cohen & Holtz, LLP ("Rachlin" or "the Firm") and Laurie S. Holtz ("Mr. Holtz") move for final summary judgment on all claims asserted by Plaintiff Mirabilis Ventures, Inc. ("Mirabilis") in this action. Because Frank Amodeo ("Amodeo") and Mirabilis knowingly and willfully diverted payroll taxes from the Internal Revenue Service ("IRS"), to which Amodeo, who controlled Mirabilis, pled guilty and for which both Amodeo and Mirabilis were convicted of federal crimes, Mirabilis cannot recover on its claims based upon the doctrine of *in pari delicto*. Moreover, Mirabilis has not suffered any compensable damages, and it cannot seek

indemnification from the Defendants for the criminal penalties it incurred as a result of its own illegal conduct.

## **INTRODUCTION**

This case is one of many pieces of litigation related to the criminal activities of Amodeo, which seem to continue *vivere in aeternum.*[1]   This litigation arises out of Mirabilis' claim that the Defendants, while performing accounting services for Mirabilis, were aware of and failed to advise the company that it could be subjected to criminal and civil liability for accepting and using payroll taxes collected from professional employee organizations ("PEOs") instead of properly turning those funds over to the IRS.   Based upon this claim, Mirabilis seeks damages of $200,000,000, representing the amount of restitution it was ordered to pay as a result of its illegal actions.[2]   The allegations of the Defendants' alleged omission and professional negligence are false, but they are not the subject of this Motion. Mirabilis' unclean hands and its attempt to improperly hold Defendants responsible for the penalty it incurred from its own and Amodeo's actions prevent Plaintiff recovering on its claims.

Amodeo concocted a scheme through which he deliberately directed various companies he controlled to use federal payroll taxes collected from PEOs to purchase personal assets, to pay secured creditors and vendors, and to purchase business assets for the

---

[1] As U. S. District Judge Antoon explained in the *Mirabilis* criminal case, the remaining litigation of these matters is "a stale and anemic remnant of the once robust prosecution of Defendant Frank Amodeo and the many Corporate Defendants once under his control."  [D.E. 149, p. 1, Case No. 6:08-cr-231].

[2] *See* D.E. 158, Case No. 6:08-cr-231.

2

benefit of the companies he controlled – including Mirabilis.[3]   [D.E. 38, p. 30, Case No. 6:08-cr-176].[4]  Amodeo admitted that he knowingly orchestrated the criminal scheme, and he pled guilty to the federal crime of Failure to Collect and Remit Payroll Taxes, among other crimes, resulting in a prison sentence of 22 ½ years and a criminal monetary penalty of $181,810,518.66.  (App. Ex. 1, pp. 2-3; D.E. 140, Case No. 6:08-cr-176).[5]

It is an undisputable fact that Amodeo controlled Mirabilis.  It is equally undisputed that Mirabilis was a beneficiary of Amodeo's theft, using the ill-gotten tax monies to acquire various commercial and business assets, and otherwise benefiting from the scheme. Amodeo's actions were for the benefit of and not adverse to Mirabilis, as the ultimate goal of his scheme was to take Mirabilis public.

Mirabilis comes to this Court with very dirty hands.  Even if Mirabilis could present sufficient evidence to show that the Defendants were professionally negligent in any way, Mirabilis' own illegal conduct, and the illegal conduct imputed to it through Amodeo, operate as a complete bar to any recovery on its claims that the Defendants failed to advise it

---

[3] Defendants are separately filing an Appendix containing the Exhibits referred to in this Motion.  Citations to the Appendix are in the short-citation form [App. Ex. __], and citations to the record in this and other related proceedings are in the short-citation form [D.E. ___].

[4] A copy of Amodeo's Amended Plea Agreement is included in the Appendix at Exhibit 1.  The factual background and the vast majority of the issues raised in this Motion have already been considered by this Court in the criminal proceedings against Amodeo (Case. No. 6:08-cr-176) and Mirabilis (Case No. 6:08-cr-231), as well as in various other civil lawsuits brought by Amodeo and Mirabilis, in this Court and in Florida state court, against the Defendants and against other professionals in positions similar to the Defendants.  *See* Case Nos. 6:09-cv-1974 (the "*Beyer* Case"); 6:07-cv-1788 (the "*Palaxar* Case"); 6:09-cv-175 (the "*Berman* Case"); 502008 CA 036925 (AD) MB (Palm Beach) (the "*Rachlin* State Court Case"); and 48-2008-CA-31333 (Orange County) (the "*Berman* State Court Case").  Defendants submit that orders and other documents from those proceedings are informative and persuasive given the identical issues raised therein.  The Court may take judicial notice of those documents pursuant to Rule 201 of the Federal Rules of Evidence.

[5] A copy of the Corrected Judgment in a Criminal Case in the *Amodeo* criminal proceeding is included in the Appendix at Exhibit 2.

of the consequences of that misconduct.  Moreover, given that Mirabilis has not incurred any actual damages, and that, by its own conduct and the conduct of Amodeo, Mirabilis was responsible for its conviction and the criminal penalty it incurred, Mirabilis is not entitled to recover from Defendants the restitution it now owes to the United States as a consequence of it criminal conviction.

### STATEMENT OF RELIEF REQUESTED

Defendants seek final summary judgment on liability and damages as follows::

- Based upon established law in this and other Circuits, Mirabilis' criminal conviction of conspiring to impede the lawful function of the IRS by willfully failing to remit collected payroll taxes bars its claims in this case, as a matter of law, under the doctrine on *in pari delicto*.

- In addition to its own conviction as a bar to its claims, Amodeo's misconduct, as evidenced by his guilty plea and criminal conviction for the crime of Failure to Collect and Remit Payroll Taxes, in violation of 26 U.S.C. § 7202 and 18 U.S.C. § 2, is imputed to Mirabilis.  Thus, Amodeo's imputed misconduct presents a second, separate basis to bar Mirabilis' claims, as a matter of law, under the doctrine of *in pari delicto*.

- Mirabilis admittedly has not incurred any out-of-pocket losses due to the alleged professional malpractice of the Defendants.  Because Mirabilis is responsible for its own conviction and criminal monetary penalty, it cannot seek indemnification from the Defendants for that penalty as a matter of law.

## BASES FOR RELIEF REQUESTED

I.      *Procedural History*

On May 27, 2008, Mirabilis filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.  [D.E. 1, Case No. 6:08-bk-04327].  On December 5, 2008, Mirabilis commenced an adversary proceeding in the Bankruptcy Court against the Defendants and Jose I. Marrero.  *Id.* at D.E. 108.[6]

On October 13, 2009, this Court granted Defendants' Motion to Withdraw the Reference, and the matter was transferred to this Court on November 17, 2009.  [D.E. 18; D.E. 32, Case No. 6:08-ap-223].  Thereafter, on April 1, 2010, Mirabilis filed its Second Amended Complaint.  [D.E. 52].  Defendants filed their Answer and Affirmative Defenses to Mirabilis' Second Amended Complaint on April 15, 2010, in which Defendants set forth the affirmative defense of *in pari delicto*.  [D.E. 53, p. 7, ¶4].

II.     *Background and Facts*

a.      *Mirabilis' Claims*

This is essentially an accounting malpractice action based upon an alleged omission. [D.E. 52].  Mirabilis' claims arise as a result of Amodeo and his companies' plan to utilize Mirabilis to "acquire and rehabilitate" a PEO book of business owned by Presidion Solutions, Inc ("PSI").  *Id.*, ¶ 24.  That deliberate plan "called for the interim nonpayment of federal payroll taxes to the IRS," which would be "truthfully reported but not remitted."  *Id.*, ¶ 25-26.  The collected but unremitted payroll taxes would then be used to fund ongoing operations.  *Id.*, p. 27.

---

[6] Plaintiff subsequently dismissed Mr. Marrero from this action.  [D.E. 58].

Mirabilis alleges that the Defendants, who were retained by the company to provide specific non-auditing accounting services, failed to advise Mirabilis that its actions in not turning over collected federal payroll taxes to the IRS "could result in civil and criminal liability for Mirabilis . . ."  *See id.,* ¶ 57, 64 and 72.  As a result of that omission, Mirabilis seeks damages of $200,000,000, representing an allowed unsecured claim by the United States against Mirabilis.[7]

> b.  *The Convictions of Amodeo and Mirabilis*

Amodeo's scheme to deliberately fail to remit collected federal payroll taxes served as the basis for criminal convictions for both Amodeo and Mirabilis.  On August 6, 2008, Amodeo was indicted on charges of Conspiracy, Failure to Remit Payroll Taxes, Wire Fraud, and Obstruction of an Agency Action.  [D.E. 1, Case No. 6:08-cr-176].[8]  The charges were based upon Amodeo's willful and knowing failure to remit payroll taxes to the IRS, which were instead used to "purchase, fund and grow" the businesses Amodeo controlled, including Mirabilis.  *Id.*, p. 14-15.

On September 24, 2008 – more than two months before Plaintiff filed this action – Amodeo entered into an Amended Plea Agreement, pleading guilty to the federal crimes of Conspiracy (18 U.S.C. § 371), Failure to Collect and Remit Payroll Taxes (26 U.S.C. § 7202 and 18 U.S.C. § 2) and Obstruction of an Agency Proceeding (18 U.S.C. § 1505).  (App. Ex.

---

[7] *See* Plaintiff's Answers to Defendants' First Set of Interrogatories to Plaintiff, p. 3, ¶ 3.  (A copy of Mirabilis' answers to interrogatories is included in the Appendix at Exhibit 3).

[8] A copy of the Indictment in the *Amodeo* criminal proceedings is included in the Appendix at Exhibit 4.

1).[9]   In that plea agreement, Amodeo admitted that he "directed that the payroll taxes collected from [PEO] clients not be paid over to the Internal Revenue Service, but instead be used to pay secured creditors (both arm's length third parties and entities Amodeo controlled), critical vendors of [PSI's subsidiaries], and to purchase commercial and business assets for the benefit of Amodeo" and his other companies.  *Id.*, p. 30.[10]   Those benefits included acquiring other businesses and paying operating expenses, which enabled Amodeo to fund his companies' operations, including those of Mirabilis.  *Id.,* p. 31, 35.  The ultimate purpose of not remitting payroll taxes was to "grow Mirabilis to the point that it could become a publicly traded company."  *Id*., p. 30.  Amodeo was ultimately convicted on his plea.  (App. Ex. 2).

Like Amodeo, Mirabilis was indicted for conspiring (with Amodeo and two of his other companies) to willfully impede the function of the IRS in its collection of payroll taxes. [D.E. 30, 6:08-cr-231].[11]   Originally, Mirabilis pled not guilty, but it later moved to withdraw its plea and sought entry of a plea of *nolo contendere* [D.E. 139, Case No. 6:08-cr-231],[12]

---

[9] This Court previously took judicial notice of Amodeo's Plea Agreement in the *Beyer* Case, in granting summary judgment against Mirabilis.  [D.E. 33, p. 1-2, Case No. 6:09-cv-1974].

[10] This Court previously took judicial notice of the Court's acceptance of Amodeo's guilty plea in both its order granting summary judgment in the *Beyer* Case and in its order on an earlier appeal of a ruling on the Defendants' motion to dismiss the Mirabilis bankruptcy.  [D.E. 33, p. 2, Case No. 6:09-cv-1974; D.E. 30, p. 2, n. 2, Case No. 6:09-cv-1658].

[11] A copy of the Superseding Indictment in the *Mirabilis* criminal proceeding is included in the Appendix at Exhibit 5.

[12] In its Opposition to Mirabilis' Motion for Consent to Withdraw its Plea of Not Guilty and Enter a Plea of *Nolo Contendere*, the United States set forth the reason for Mirabilis' change of plea.  [D.E. 141, p. 3, Case No. 6:08-cr-231].  Mirabilis did not seek to enter a *nolo contendere* plea instead of a guilty plea until November of 2009, after the Circuit Court in the *Berman* State Court Case entered an order dismissing most of Amodeo's personal claims against one of his former lawyers based upon the preclusive effect of Amodeo's guilty plea and conviction, and the doctrine of collateral estoppel.  (A copy of the Order in the *Berman* State Court Case is included in the Appendix at Exhibit 6).  Mirabilis correctly anticipated that a guilty plea in its criminal

which this Court accepted at a hearing on June 16, 2010.[13]

At that hearing, the Court made the Statement of Facts part of the record, and concluded that there was "a factual basis to support the nolo contendere plea". (App. Ex. 7, p. 8, 10). Prior to the June 16 hearing, the United States filed a Statement of Facts which it would prove at trial in support of the criminal charges.[14]  Those facts included the diversion of approximately $120,000,000 in payroll tax funds from PEO businesses for Amodeo and Mirabilis' benefit, and the use of those funds for the acquisition of new business assets from an account maintained by Mirabilis.  (App. Ex. 8, p. 8-10, 13).

At the June 16 hearing, Mirabilis' President, Mr. Cuthill, and its counsel admitted that the United States could "establish by competent evidence" the facts set forth in the Statement; that, once established, those facts would be sufficient for the matter to go to the jury; and that, once presented to the jury, they could result in a guilty verdict for Mirabilis. (App. Ex. 7, p. 9).  Based upon those admitted factual bases, the Court accepted Mirabilis'

---

proceeding would have the same preclusive effect, and Mirabilis' current President and counsel sought to plead *nolo contendere* in an effort to avoid the preclusion of its various pieces of litigation when it was convicted. As further explained in this Motion, while Mirabilis' President and counsel may have been able to avoid the effect of the preclusive doctrine of collateral estoppel when it convinced the Court (over the Government's objection) to accept a *nolo contendere* plea, Plaintiff cannot avoid the preclusive effect of its own conviction for the very crimes that are the factual basis of this lawsuit, or the effect of Amodeo's imputed conduct, under the separate doctrine of *in pari delicto*.  *See infra.*, pp. 16-22.

[13] A copy of the transcript from the hearing where this Court accepted Mirabilis' plea of *nolo contendere* is included in the Appendix at Exhibit 7.  This Court previously took judicial notice of Mirabilis' *nolo contendere* plea in the *Beyer* Case.  [D.E. 33, p. 2, Case No. 6:09-cv-1974].

[14] A copy of the Statement of Facts submitted by the United States in connection with Mirabilis' *nolo contendere* plea is included in the Appendix at Exhibit 8.  [D.E. 146, Case No. 6:08-cr-231].

plea, convicted Mirabilis and imposed the criminal monetary penalty.  [D.E. 158, Case No. 6:08-cr-231;[15] *see also* (App. Ex. 5, p. 5-6, 18)].

      *c.*      *Amodeo's Control Over Mirabilis*

In his Amended Plea Agreement, Amodeo not only admitted to his role in the scheme to divert federal payroll tax funds, but he also admitted to his control over the companies that were participating in the scheme.  Amodeo admitted that although he was never an officer, director or employee of Mirabilis, "he created Mirabilis, brought in the officers to run the company and funded the company with diverted payroll tax funds that should have been paid over to the Internal Revenue Service."  (App. Ex. 1, p. 32).  Amodeo further admitted that he "exercised or attempted to exercise considerable control over both the long term and short term management of [Mirabilis]."  *Id.*  As an example of that control, Amodeo admitted the following:

> [D]uring a March 21, 2006 Mirabilis Board of Directors meeting attended by AMODEO, he told the Board that they had a fiduciary obligation to him as the company's sole common stock shareholder and senior secured creditor, recommended various changes to the composition of the Board of Directors that were subsequently implemented by the Board, laid out recommended changes in operational procedures that were also implemented by the Board, and proposed future acquisition strategies which were to be funded by cash infusions which he would supply.  The cash infusions made by AMODEO were derived from payroll tax funds.  Mirabilis used these funds to fund acquisitions of other businesses, pay substantial salaries and make investments in businesses in which certain members of the conspiracy held separate interests.

*Id.*  In addition to causing Mirabilis to use the ill-gotten funds for further acquisitions, Amodeo also "knowingly permitted payroll taxes collected on a daily basis from the PEO

---

[15] A copy of the Judgment in a Criminal Case in the Mirabilis criminal proceeding is included in the Appendix at Exhibit 9.

book of business to be used to fund net payroll and health claims of Mirabilis and its affiliates." *Id.* As sworn to and admitted by Amodeo himself, he controlled Mirabilis.[16]

The issue of Amodeo's control over Mirabilis has been repeatedly examined by this Court since the entry of his plea.[17]  Moreover, two decisions by this Court granting summary judgment against Mirabilis – under very similar circumstances, in related cases – establish Amodeo's control.  And the most recent decision establishes Amodeo's control as a matter of law.

In the *Beyer* Case, Mirabilis sought to hold one of its former attorneys liable for failing to advise it of the consequences of its illegal conduct.  This Court granted summary judgment in favor of Mr. Beyer and his law firm.  [D.E. 33, Case No. 6:09-cv-01974].  In granting summary judgment, the Court found again that "Mirabilis was controlled by Frank Amodeo [], who used the company and a web of subsidiaries and related companies as vehicles for an enormous tax fraud and money laundering scheme." *Id.*, p. 1.[18]

---

[16] Amodeo's control over Mirabilis was also reflected in Mirabilis' Indictment, which is replete with references to Amodeo's control over Mirabilis, and Mirabilis' resulting involvement in the scheme to intentionally impede the IRS.  (App. Ex. 5, pp. 6, 8, 12, 13 and 15) ("It was further part of the conspiracy that defendant Mirabilis, a private equity fund, would be used as the umbrella company used in the tax fraud and wire fraud scheme and would be controlled by Amodeo and other co-conspirators").

[17] In its April 21, 2010 Order on an earlier appeal, this Court stated that "Mirabilis was controlled by Frank Amodeo [], who used the company and its subsidiaries as vehicles for an enormous tax fraud and money laundering scheme."  [D.E. 30, p. 2, Case No. 6:09-cv-1658].  In reaching this conclusion, the Court relied upon Amodeo's guilty plea and conviction, and Mirabilis' indictment.  *Id.* at n. 2.  In its June 17, 2010 Order accepting Mirabilis' plea, this Court stated that Amodeo was the "person responsible for the conduct of the Corporate Defendants," which included Mirabilis.  [D.E. 149, p. 11, Case No. 6:08-cr-231].

[18] In the *Beyer* Case, this Court found Mirabilis' evidence in support of its claims against its lawyers for malpractice to be so lacking that, not only was it insufficient to survive summary judgment, but that it "may not even be enough to avoid Rule 11 sanctions."  [D.E. 33, p. 9, Case No. 6:09-cv-01974].

10

In the *Palaxar* Case, [D.E. 285, Case No 6:07-cv-1788], Mirabilis had the opportunity to fully litigate the issue of Amodeo's control of Plaintiff. This Court granted summary judgment against Mirabilis after conducting a thorough examination of the evidence of Amodeo's control. The Court concluded that Amodeo was "at all times, the Chairman, Sole Director and Shareholder of Mirabilis." *Id.*, p. 2. The Court further concluded that "Amodeo frequently appointed and replaced Mirabilis officers and directors and exercised tight control over the affairs of both Mirabilis and Nexia Strategy." *Id.* The Court found that the documentary evidence, deposition testimony and sworn affidavits submitted by the Palaxar defendants established Amodeo's control, and *Mirabilis' own documents* corroborated that testimony. *Id.* p. 2, n. 1, 2. This Court's finding that Amodeo controlled Mirabilis is binding on Mirabilis in this litigation under principles of defensive collateral estoppel, *see infra.* at pp. 20-21.[19]

    d.    *Mirabilis' Damage Claim*

In its Second Amended Complaint and its answers to interrogatories, Mirabilis seeks damages of $200,000,000, representing the sum in "an allowed claim in bankruptcy against it." [D.E. 52, ¶ 59, 66 and 73] (App. Ex. 3, p. 3 ¶ 3). The $200,000,000 amount is set forth

---

[19] Should the Court determine to revisit the issue of Amodeo's control of Mirabilis, the same evidence examined in the *Palaxar* Case is evidence in this case, along with additional evidence, including deposition testimony of Plaintiff's current President, R.W. Cuthill, Jr. and Plaintiff's former President, James Sadrianna. Should the Court not find the issue of Amodeo's control of Mirabilis to be established as a matter of law, Defendants respectfully request that the Court hold an evidentiary hearing on the matter of Amodeo's control. *See* Fed. R. Civ. P. 43; *see also Resolution Trust Corp. v. Stroock & Stroock & Lavan*, 853 F. Supp. 1422, 1423-24 (S.D. Fla. 1994) (after motion for summary judgment was fully briefed and oral argument was heard, district court set Fed. R. Civ. P. 43 hearing).

in the criminal judgment against Mirabilis, as a criminal monetary penalty for which Mirabilis must pay restitution.  (App. Ex. 9).[20]

The undisputed evidence is that Mirabilis has not paid one penny of the $200 million criminal monetary penalty to the United States government.  (App. Ex. 10, p. 300 ln. 23 – p. 301 ln. 2).  Specifically, Mirabilis' current President, R.W. Cuthill, testified that Mirabilis will not pay the penalty to the government, because it is Mirabilis' intent to liquidate through its bankruptcy, with no plan to operate or reorganize Mirabilis in the future.  *Id.*, p. 301 p. 18 – p. 303 ln. 2.  Mirabilis has admitted that its claims against the Defendants are "just a manner of trying to raise money to pass through to the government."  *Id.*, p. 303 ln. 3 – 6.

## <u>MEMORANDUM OF LEGAL AUTHORITY</u>

I.      *Summary Judgment Standard*

This Court is well aware of the summary judgment standard.  *Int'l Ship Repair and Marine Servs., Inc. v. St. Paul Fire and Marine Ins. Co.*, 906 F. Supp. 645, 649-50 (M.D. Fla. 1995).  Fed. R. Civ. P. 56(c) "***mandates*** the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Defendants have waited until the discovery period was closed to file this dispositive motion. The time is now appropriate to finally resolve this case.

---

[20] The undisputed evidence in this case is that the $200,000,000 criminal monetary penalty amount was agreed to by Mirabilis and two other Amodeo-controlled companies, all of which, with Amodeo, are jointly and severally liable to pay the restitution.  *See* Deposition of R.W. Cuthill, p. 300, ln. 6-15 (relevant portions of the deposition of Mirabilis' President, R.W. Cuthill, from his April 21, 2010 deposition in this matter are included in the Appendix at Exhibit 10); *see also* App. Ex. 9.

The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and identifying those portions of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. Defendants meet this burden by presenting the Court the undisputed record in support of the requested relief. Once the moving party has established the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings "and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(c)). The non-moving party must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Mirabilis can not avoid the preclusive consequences of the undisputable facts in this case. The Court should reject any effort by Mirabilis to use its response to this Motion in an effort to deflect the issues related to its own criminal conviction, Amodeo's imputed criminal conduct and the lack of legally compensable damages. Under this standard, Defendants are entitled to a final summary judgment on liability and damages.

II.     *The Doctrine of In Pari Delicto Bars Mirabilis' Claims*

The doctrine of  *in pari delicto* is derived from the Latin maxim *in pari delicto prior est condition defendentis*, which translates to "where both parties are equally in the wrong, the position of the defendant is the stronger." *O'Halloran v. PriceWaterhouseCoopers LLP*, 969 So. 2d 1039, 1044 (Fla. Dist. Ct. App. 2007) (citing *Black's Law Dictionary* 1725, App. B); *see also In re Verilink Corp.*, 405 B.R. 356, 362 (N.D. Ala. 2009). Under Florida law, the defense of *in pari delicto* "prohibits plaintiffs from recovering damages resulting from

their own wrongdoing." *Id*. (citations omitted).[21]   The doctrine operates to bar legal remedies when both parties are equally in the wrong, or where "the plaintiff had greater responsibility for the wrongdoing than the defendant." *In re Gosman*, 382 B.R. at 837-38. Florida follows the "general principal that 'no one shall be permitted to profit by his own fraud, or take advantage of his own wrong, or found any claim upon his own iniquity, or profit by his own crime.'" *Id*. at 838 (citation omitted).

In determining whether *in pari delicto* applies, the court must first examine whether the plaintiff's guilt "is far less in degree than defendant's, so as to make the doctrine inapplicable." *Id.*, *see also Turner v. Anderson*, 704 So. 2d 748, 750 (Fla. Dist. Ct. App. 1998) (citing *Feld and Sons, Inc. v. Pechner, Dorfman, Wolfee, Rounick & Cabot*, 458 A.2d 545 (Pa. 1983).   If the plaintiff's guilt is not far less than the defendant's, the court then inquires if applying the doctrine would be contrary to public policy. *Id*.   However, where the plaintiff's guilt rises to the level of criminal misconduct, courts are not required to look to public policy considerations because "no public policy should allow [a plaintiff] to recover damages as a result of engaging in criminal conduct . . ." *Turner*, 704 So. 2d at 750.

The *Turner* decision is highly instructive.   A client brought a civil action against his attorneys for legal malpractice and breach of fiduciary duty arising out of their representation of him in a securities arbitration. *Id*. at 749.   The client admittedly committed perjury in the arbitration proceeding, but alleged that his counsel "breached their duty by advising him to testify untruthfully, which he did, to his detriment." *Id.*   The trial court granted the attorneys'

---

[21] Because Mirabilis' claims against the Defendants are state law professional negligence, breach of fiduciary duty and negligent supervision claims, Florida law applies in determining what defenses may be raised against Mirabilis, including the defense if *in pari delicto*. *See In re Gosman*, 382 B.R. 826, 837 (S.D. Fla. 2007).

motion for summary judgment on their defense of *in pari delicto*, based upon the fact that the

client had admittedly testified falsely, and thus could not recover in an action against his

lawyers for advising him to do so.  *Id.*  The Florida District Court of Appeal affirmed, finding

that under the first prong of the *in pari delicto* test the client's wrongdoing was not far less

than the defendant's.  *Id*. at 750.  Because it found the plaintiff's wrongdoing to be

intentional and criminal, it did not reach the second prong of the test, instead finding that,

under such circumstances, public policy should never allow a plaintiff to recover damages as

a result of engaging in criminal conduct.  *Id.*[22]

Other courts have similarly found that where the plaintiff in a subsequent civil action

committed an intentional wrong, *in pari delicto* bars a claim against the plaintiff's

professional for failing to advise of the consequences of that wrong.[23]  Federal courts have

repeatedly barred claims made by or on behalf of a corporation (including debtors in

---

[22] When courts do consider the second prong of the test, the public policy considerations center on preventing the wrongdoer from successfully hedging his bets.  In other words, the public interest is not served by allowing persons to "commit illegal acts upon their [professional's] advice" only to later obtain relief from that professional "from any damage they might suffer if caught."  *Turner*, 704 So. 2d at 751 (quoting *Evans v. Cameron*, 360 N.W.2d 25, 29 (Wis. 1985).  To allow otherwise would be to "reward [wrongdoers], with a great deal of money, for their criminal conduct; we [would] soften the blow of the fines and sentences imposed upon them; and we [would] encourage others to believe that if they committed crimes on their [professional's] advice, and were caught, they too might sue . . . and be similarly rewarded."  *Feld and Sons, Inc.*, 458 A.2d at 552.  Denying relief to an admitted wrongdoer "is an effective means of deterring illegality."  *In re Verilink Corp.*, 405 B.R. at 362; *see also UCAR Int'l Inc. v. Union Carbide Corp.*, 2004 WL 137073, *10 (S.D.N.Y., Jan. 26, 2004).

[23] *See In re Gosman*, 382 B.R. at 838 (affirming dismissal of professional malpractice claim in adversary proceeding by trustee for debtor against debtor's attorney where debtor was found to have acted with intent to defraud creditors under both Federal and Florida law in related adversary proceeding); *see also Choquette v. Isacoff*, 836 N.E. 2d 329, 334-35 (Ct.App.Mass. 2005) (affirming summary judgment in favor of attorney in action by client for negligence and misrepresentation where client knowingly gave false information on bankruptcy schedules); *Baena v. KPMG, LLP*, 453 F.3d 1 (1st Cir. 2006) (affirming dismissal of action for accounting malpractice by trustee for corporation that greatly overstated its financial statements, where action charged that accountants had access to financial records and activities and failed to warn the corporation of potential problems).

bankruptcy) against the corporation's lawyers, accountants and other professionals where the corporation or its agents engaged in intentional misconduct, for which it sought to hold its professionals liable.[24]   The posture of those claims is exactly the same as Mirabilis', and the result is that Mirabilis' claims are barred as a matter of law pursuant to the doctrine of *in pari delicto*.

### III.   Mirabilis' Wrongdoing Prohibits Any Recovery on its Claims

#### a.   Mirabilis' Own Conviction Precludes Its Claims

It is undisputed that Mirabilis itself was convicted of Conspiracy to defraud the United States to impede the function of the IRS, resulting in a criminal judgment against it. (App. Ex. 5, 9).   Although Mirabilis' conviction was based upon a plea of *nolo contendere*, the fact that it was convicted, and the factual basis for its conviction, separate and apart from its plea, is admissible as evidence of its unclean hands.   *See United States v. Wyatt*, 762 F.2d 908, 911 (11th Cir. 1985) (holding that a *nolo contendere* plea does not insulate the facts underlying it from admissibility under Fed. R. Evid. 404(b)) (citing *United States v.*

---

[24] *See Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*,  437 F.3d 1145 (11th Cir. 2006) (barring claim by trustee in bankruptcy on behalf of debtor corporation against third-party holders of individual retirement accounts where corporation was guilty of RICO violations); *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F. 3d 147 (2d Cir. 2003) (barring claims by assignee of debtor corporation for breach of fiduciary duty against accounting firm that provided due diligence services to debtor in connection with debtor's purchase of another company's assets, where debtor intentionally went forward with purchase and knew that the transaction was based on grossly inflated and exaggerated revenue projections); *Grassmueck v. The Am. Shorthorn Ass'n*, 402 F. 3d 833 (8th Cir. 2004) (barring negligence action against association by bankruptcy trustee of investment partnerships where investment partnerships committed fraud by taking invalid depreciation tax deductions); *In re Verilink Corp.*, 405 B.R. 356 (N.D. Ala. 2009) (barring claim by liquidating trustee of corporate debtor against officers and directors, legal counsel and investment banking firm in connection with corporate acquisition where corporation's agents intentionally proceeded with acquisition knowing it was presented to shareholders in an unreasonably good light and with negative information withheld); *In re Parmalat Sec. Litig.*, 659 F. Supp. 504 (S.D.N.Y. 2009) (barring claim by commissioner of corporation in Italian reorganization proceedings against outside auditor and bank where corporation intentionally concocted massive fraud involving misleading transactions that created the appearance of financial health); *UCAR Int'l Inc. v. Union Carbide Corp.*, 2004 WL 137073 (S.D.N.Y. Jan. 26, 2004) (barring claims against former controlling shareholders where corporation was guilty of antitrust conspiracy).

*Williams*, 642 F.2d 136, 138-39 (5th Cir. 1981) (explaining that a *nolo contendere* plea admits "every essential element of the offense (that is) well pleaded in the charge," and that there is a "distinct and meaningful difference" between the evidentiary use of a plea versus a criminal conviction); *see also United States v. Adedoyin*, 369 F.3d 337, 343-44 (3d Cir. 2004) (Fed. R. Evid. 410 does not prohibit the admission of a *conviction* on a plea of *nolo contendere* as opposed to the plea itself, because the plea "has the same legal consequences as a plea of guilty and results in a conviction"); *Burrell v. United States,* 2002 WL 31051594, * 3, n. 3 (E.D.N.Y. Aug. 19, 2002) (a conviction based upon a *nolo* plea is a final adjudication, and thus "the admissibility and the collateral consequences of the conviction are not determined by Rule 410").[25]

This is exactly the type of claim which the *in pari delicto* doctrine prohibits. Mirabilis was convicted of conspiring to knowingly and intentionally divert federal payroll taxes from the IRS.  (App. Ex. 9).  Moreover, Mirabilis' own allegations in its complaint admit that the illegal plan would "utilize Mirabilis," and that a key element of it "called for

---

[25] Defendants are not relying on the preclusive effect of Mirabilis' plea of *nolo contendere*, although other courts have found such reliance to be appropriate where the criminal defendant seeks relief from others in a later civil proceeding.  *See, e.g., Walker v. Schaeffer*, 854 F. 2d 138, 143 (6th Cir. 1988) (holding that Fed. R. Evid. 410 does not prevent the preclusive effect of a *nolo contendere* plea entered by a criminal defendant in a subsequent civil proceeding in which that defendant is a plaintiff, because the "use of the no-contest plea for estoppel purposes is not 'against the defendant' within the meaning of Fed. R. Evid. 410."); *see also Delong v. State ex rel. Oklahoma Dept. of Public Safety*, 956 P.2d 937, 938-39 (Ok.Civ.App. 1998) (criminal defendant's *nolo contendere* plea held admissible in later civil action by same criminal defendant against the State for false arrest); *Brown v. Theos*, 550 S.E. 2d 304, 306-07 (S.C. 2001) (plea of no contest by criminal defendant-turned-plaintiff in civil action against attorney for legal malpractice was admissible because the plaintiff's "no contest plea, not his attorney's negligence, caused his incarceration."); *Behm v. Campbell*, 925 So. 2d 1070, 1073-75 (Fla. Dist. Ct. App. 2006) (allowing use of *nolo contendere* plea against plaintiff in later civil action because one entering a no contest plea in a criminal proceeding should not be allowed to repudiate that declaration in seeking relief in a later civil action).  Undersigned counsel recognizes that the Eleventh Circuit has suggested that a criminal defendant may be able to avoid the preclusive doctrine of collateral estoppel if it can persuade the trial court to accept a *nolo contendere* plea.  *See Raiford v. Abney*, 695 F.2d 521, 523 (11th Cir. 1983). In light of the bar to Mirabilis' claims under the *in pari delicto* defense, this Court need not determine if the facts of this case would permit dismissal based on the *nolo contendere* plea alone.

the interim nonpayment of federal payroll taxes" which would be "truthfully reported but not remitted." [D.E. 52, ¶ 24-27]. The Defendants are accused of failing to warn Mirabilis of the consequences of those very same acts. [D.E. 52, ¶ 57, 64 and 72]. It is undisputed that Mirabilis' fault is not far less than the Defendants', and the first prong of the *in pari delicto* test is therefore satisfied. *See Turner*, 704 So. 2d at 751*; In re Gosman,* 382 B.R. at 838 (holding that the actual fraud of the plaintiff is more objectionable than the alleged negligence of the defendant); *see also Official Comm. of the Unsecured Creditors of Color Tile, Inc.,* 322 F.3d at 163-64 (finding debtor's fault to be at least equal to defendant's where debtor's *own pleadings* established that the debtor intentionally pursued the wrongdoing for which it seeks redress).[26] Because Mirabilis' conduct was illegal and it was convicted, this Court need not consider the second prong of the *in pari delicto* test. *See Turner,* 704 So. 2d at 751.[27] Therefore, Mirabilis' claims are barred as a matter of law, as a consequence of its own criminal conviction, under the doctrine of *in pari delicto. See, e.g., Nieman v. Provident Life & Accident Ins. Co.,* 217 F. Supp. 2d. 1281, 1289 (S.D. Fla. 2002) (granting motion for

---

[26] The consequences of Mirabilis' allegations of its own participation in the illegal scheme, in addition to establishing the first prong of the *in pari delicto* defense, also raise a more basic issue about the elements of its claim. Other courts have recognized that where the pleadings establish a deliberate course of action on the part of a wrongdoer, the consequences of which serve as the basis for a later civil action against an allegedly negligent third party, proximate cause for that damage is lacking, as it could have been caused by the wrongdoer's own misconduct. *See Official Comm. of the Unsecured Creditors of Color Tile, Inc.,* 322 F.3d at 163-64; *In re Verilink*, 405 B.R. at 365.

[27] Even if public policy considerations are examined, they do not prevent the application of the *in pari delicto* defense under these circumstances. It cannot serve the public interest to allow an intentional wrongdoer to escape the consequences of its wrongdoing by passing them on to, at most, a negligent professional. *See Feld and Sons*, 458 A.2d at 552; *see also In re Gosman*, 382 B.R. at 838; *Evans*, 360 N.W.2d at 29.

summary judgment in favor of defendant on the defense of *in pari delicto* where plaintiff had earlier pled *nolo contendere* to criminal charges, among other bad acts).[28]

   b.    *Frank Amodeo's Illegal Acts are Imputed to Mirabilis, Precluding Any Recovery by Mirabilis*

In addition to Mirabilis' own conviction, supporting summary judgment in this case, the criminal actions and conviction of Amodeo are imputed to Mirabilis, leaving no doubt as to Mirabilis' status as a greater wrongdoer than the Defendants.

Where the defense of *in pari delicto* is asserted against a corporation based on the actions of the corporation's agent, a court must determine whether the conduct of that agent is properly imputed to the corporation. *O'Halloran*, 969 So. 2d at 1044-45.[29]   In Florida, a principal will be held liable for the acts of its agent that are within the course and scope of the agency. *Id*. at 1045 (citing *Rossler v. Novak*, 858 So. 2d 1158, 1161 (Fla. Dist. Ct. App. 2003)).   If, however, the corporation's agent was acting adversely to the corporation's interests, "the knowledge and misconduct of the agent are not imputed to the corporation."

---

[28] It is clear that Mirabilis' counsel sought to enter a *nolo contendere* plea in this case to avoid the consequences of direct collateral estoppel.  [D.E. 141, p. 3, Case No. 6:08-cr-231].  Indeed, at the very first status conference in this case, undersigned counsel had presented the Bankruptcy Court with case law, previewing its separate defense of collateral estoppel in the event of a guilty plea by the Plaintiff.  *See Montalbano v. Comm'r of IRS*, 2009 WL 59150 (11th Cir. Jan. 12, 2009); *see also* Transcript of Proceedings before U.S. Bankruptcy Judge Karen Jennemann, Feb. 19, 2009, p. 12; D.E. 53, p. 7 ¶ 3. While Mirabilis' counsel may have artfully avoided the collateral estoppel defense, it failed to account for the preclusive effect of Plaintiff's conviction under the separate *in pari delicto* doctrine.  That conviction is final and the preclusive effect can not be avoided by any further machinations by Mirabilis' President and its counsel.

[29] The Florida court's decision in *O'Halloran* contains a thorough discussion of the doctrine of *in pari delicto*, its application and the policy behind it.  The court in *O'Halloran* eventually found that the trial court erred in dismissing the plaintiff's claims because, at the motion to dismiss stage, the facts in that case did not clearly support the defense.  *O'Halloran*, 969 So. 2d at 1047.  The court in *O'Halloran* itself recognized that the defendants in that case could continue to pursue their defense of *in pari delicto*, and establish the facts necessary to support it.  *Id*.  In this case, discovery is closed and the clear, undisputed facts show that Amodeo controlled Mirabilis, and that his illegal actions were for the benefit of, and not adverse to, the interests of Mirabilis.

*Id.* (quoting *State Dep't. of Ins. v. Blackburn*, 633 So. 2d 521, 524 (Fla. Dist. Ct. App. 1994)).  A claim of adverse interest cannot be invoked where the corporate actor is the "alter ego" of the corporation – <u>i.e.</u>, where the corporation is "wholly dominated" by the person engaged in wrongdoing, such that the corporation has itself become "an instrument of the wrongdoing".  *Id.; see also Grassmueck*, 402 F.3d at 838 (explaining that under the "sole actor" doctrine, where the principal and agent are alter egos, the agent's knowledge is imputed to the principal even if the agent is acting adversely to the principal); *accord Official Comm. of the Unsecured Creditors of Color Tile, Inc.*, 322 F.3d at 165 (where "the persons dominating and controlling the corporation orchestrated the fraudulent conduct," their knowledge is imputed to the corporation, negating the adverse interest exception).  Where the misconduct of the agent ultimately benefits the corporation and the corporation has been operated as an "engine of theft," the agent's misconduct will be imputed to the corporation. *O'Halloran*, 969 So. 2d at 1045 (citing *Cenco, Inc. v. Seidman & Seidman*, 686 F. 2d 449, 454 (7th Cir. 1982).[30]

It is established under principles of defensive collateral estoppel that Amodeo controlled Mirabilis.  Defensive collateral estoppel prevents a plaintiff from re-litigating an issue which the plaintiff previously litigated unsuccessfully against another defendant.  *See Blonder-Tongue Laboratories, Inc. v. Univ. of Ill. Foundation*, 402 U.S. 313 (1971); *see also*

---

[30] The fact that Amodeo may have also benefitted personally from the illegal scheme is of no moment.  The *in pari delicto* doctrine will still operate to bar recovery in such situations where the corporation benefitted from the results of the misconduct in the form of increased cash flow for operating expenses and future acquisitions. *See In re Parmalat*, 659 F. Supp. 2d at 521 (the critical point of the *in pari delicto* doctrine is that "while the theft from the company of even a pencil is an act solely for the benefit of the employee, the raising of capital for a corporations is part of the corporate business.  That is so despite the fact that the financing ultimately provides the money to buy the pencil that the employee then steals.")

*Martin K. Eby Constr. Co., Inc. v. Jacobs Civil, Inc.*, 2006 WL 1881359, * 13 (M.D. Fla. 2006).   In the Eleventh Circuit, for defensive collateral estoppel to apply the issue must be identical to that previously and actually litigated, the issue must have been necessarily decided, and the estopped party must have been a party to the prior proceeding.   *In re Gosman*, 382 B.R. at 839 (citations omitted).

The issue of Amodeo's control was fully, actually and necessarily decided by this Court in the *Palaxar* Case.   [D.E. 285, p. 2, Case No. 6:07-cv-01788].   Mirabilis, the plaintiff in this action, was also a plaintiff in the *Palaxar* Case.   In granting summary judgment against Mirabilis, this Court fully examined the evidence, and found that Amodeo was the Chairman, Sole Director and Shareholder of Mirabilis; that he appointed and replaced Mirabilis' management; and that he "exercised tight control" over Mirabilis.   *Id.*   The same issue presented and decided in the *Palaxar* Case is at issue here.   The elements of the doctrine of defensive collateral estoppel are satisfied, and Mirabilis is therefore precluded from arguing that Amodeo did not control it for purposes of imputation.[31]

There is no evidence anywhere in the record that Amodeo's actions were adverse to Mirabilis.   Indeed, his actions directly benefitted the company. At a minimum, Amodeo's illegal actions were well within the scope of his agency, for the benefit of Mirabilis.   His control over Mirabilis and his scheme was so complete, however, that Mirabilis indeed became the alter ego of Amodeo, with its purpose being both an engine of the theft and the

---

[31]   Although the summary judgment order in *Palaxar* is not a final order due to the pending counterclaim against Mirabilis, the Order granting summary judgment against all of Mirabilis' claims is sufficiently final to have preclusive effect. *See Christo v. Padgett*, 223 F.3d 1324, 1339 and n. 47 (11th Cir. 2000); *see also Pincus v. Law Offices of Erskine & Fleisher*, 617 F. Supp. 2d. 1265, 1269 (S.D. Fla. 2009) (where order granting summary judgment is sufficiently firm to be accorded preclusive effect under estoppel principles, pending appeal of that order does not limit its preclusive effect).

ultimate beneficiary of that theft.  Therefore, the adverse interest exception does not apply.  *See, e.g., Grassmueck*, 402 F.3d at 841 (there is no reason to apply the adverse interest doctrine where the agent had "singular domination" over the corporation); *In re Parmalat*, 659 F. Supp. 2d at 521.

Amodeo's illegal acts are therefore imputed to Mirabilis as a matter of law and the doctrine of *in pari delicto* bars Mirabilis from seeking damages from the Defendants based upon the consequences of its illegal acts.  This conclusion is entirely consistent with decisions of other federal courts that have found the defense to be a complete bar to claims brought by a bankrupt or defunct corporation with unclean hands.  *See, supra. n. 24.*

IV.     *Mirabilis Cannot Recover its Damages as a Matter of Law*

Not only are Mirabilis' claims against the Defendants barred as a matter of law under the *in pari delicto* doctrine, Mirabilis is prohibited from recovering the specific damages it seeks, based upon related legal principles.  Through its interrogatories and corporate deposition testimony, Mirabilis admits that it is seeking to recover the $200,000,000 criminal monetary penalty assessed against it and in favor of the United States government.  Mirabilis has not incurred a single penny of compensatory damages in this case.  Plaintiff's entire damages theory is to pass off its criminal penalty to the Defendants.  (App. Ex. 3, p. 3;  App. Ex. 10, p. 300 ln. 23 – p. 301 ln. 2).

Mirabilis' claims do not represent compensable damages.  *See Illinois Cent. R. Co. v. Crail*, 271 U.S. 57, 63 (1930) (the purpose of common law remedies is that "they shall afford only compensation for the injury suffered"); *Bidon v. Dept. of Prof'l Regulation, Florida Real Estate Comm'n*, 596 So. 2d 450, 452 (Fla. 1992) (actual or compensatory damages are

those "necessary to compensate adequately an injured party for losses sustained . . ."); *Phillips v. Ostrer*, 481 So. 2d 1241. 1246 (Fla. Dist. Ct. App. 1986) (the purpose of an award of compensatory damages is to make the injured party whole).  Instead, Mirabilis' theory of damages is to "raise money to pass through to the government."  *Id.*, p. 303 ln. 3 – 6.   In other words, Mirabilis seeks to have the Defendants indemnify it for the consequences of its illegal conduct.  This it cannot do.

It is settled in Florida that a party cannot prevail on a claim of common-law indemnity unless it is without fault, and unless its liability is vicarious and solely for the wrong of another.  *See Dade County School Board v. Radio Station WQBA*, 731 So. 2d 638, 642 (Fla. 1999); *see also Safecare Medical Ctr. v. Howard*, 670 So. 2d 1020, 1022 (Fla. Dist. Ct. App. 1996) (explaining that there can be no indemnity between joint tortfeasors because a "weighing of the relative fault of tortfeasors" has no place in the concept of indemnity).  It is undisputed that Mirabilis, through its own conviction and through the guilty plea and conviction of its principal, Amodeo, is not without fault.  Nor is its liability for its illegal conduct vicarious – it is a direct result of its own and Amodeo's actions.   Therefore, Mirabilis is precluded from seeking damages from the Defendants that will serve no other purpose but to indemnify it for the consequences of its own illegal actions.[32]

Just as a bad actor cannot hold another *liable* if the bad actor is in equal or greater fault under the doctrine of *in pari delicto*, where a corporation convicted of a federal crime

---

[32] Even if this Court were to conclude that Mirabilis' fault, by itself or through Amodeo, is far less than the Defendants', and that therefore the doctrine of *in pari delicto* does not apply to preclude the claims as a matter of law, Mirabilis' damage claims would still be barred.  Under common-law indemnification, there is no weighing of the parties' relative fault.  Unless the plaintiff is *completely without fault* – which Mirabilis is not – indemnification is improper.  *See Houdaille Indus., Inc. v. Edwards*, 374 So. 2d 490, 493 (Fla. 1979) (in determining whether indemnification is proper, courts in Florida do not weigh relative fault, but simply determine whether the party seeking indemnification is completely *without* fault).

for which it is subject to forfeiture or a criminal penalty seeks to pass that penalty on to another, federal courts will prohibit its *damages*. *See UCAR Int'l Inc.*, 2004 WL 13703 at *9-10 (where a corporation's damage claims against third parties are the result of a common set of operative facts through which is has already committed wrongdoing, those damages are "nothing more than a veiled and improper attempt to seek contribution and indemnification" that will not be allowed).

## CONCLUSION

Frank Amodeo is serving more than 22 years in federal prison because of his deliberate and knowing scheme to defraud the IRS.  Mirabilis was an engine for Amodeo's theft, and one of the ultimate beneficiaries of his actions.  Mirabilis itself has been convicted of conspiring with Amodeo in furtherance of the illegal scheme.  Having suffered the consequences of its illegal actions to the tune of a $200,000,000 criminal penalty, Mirabilis now seeks to "soften the blow of the fines and sentences" imposed on it by alleging that the Defendants should have warned it of its crimes, and that they now should indemnify it.[33]

This entire bankruptcy proceeding has been cynically used to try to raise money to pay the United States in an effort to reduce Amodeo's prison sentence.  The Government itself has recognized that the continuation of this action, in the face of the pleas and convictions of Amodeo and Mirabilis, is only benefitting the President of the company and his professionals.  [D.E. 474, p. 5, Case No. 6:08-br-04327].  The law does not allow this shifting of blame or this manipulation of the Due Administration of Justice to benefit two convicted felons.  Summary judgment should be entered in favor of the Defendants on all

---

[33] *Feld and Sons, Inc.*, 458 A.2d at 552.

Counts.   To quote this Court, "[e]nough is enough".   [D.E. 33, p. 11, Case No. 6:09-cv-1974].

Respectfully submitted,

s/Joseph A. DeMaria
**C. Thomas Tew, P.A.**
  Florida Bar No. 098160
   tt@tewlaw.com
**Joseph A. DeMaria, B.C.S**
  Florida Bar No. 764711
   jad@tewlaw.com
**TEW CARDENAS LLP**
1441 Brickell Avenue, 15th Floor
Miami, Florida 33131
Telephone:  (305) 536-1112
Facsimile:  (305) 536-1116
*Attorneys for Defendants, Rachlin Cohen &*
  *Holtz, LLP and Laurie S. Holtz*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this **1st** day of **November**, **2010**, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to Todd K. Norman (tnorman@broadandcassel.com), Broad and Cassel, 390 N. Orange Avenue, Suite 1400, Orlando, Florida 32801, and to Robert C. Widman, Esq. (widmor48@mwk-law.com), Morris & Widman, P.A., 245 N. Tamiami Trail, Suite E, Venice, Florida 34285.

        s/Joseph A. DeMaria
        JOSEPH A. DEMARIA, ESQ.

547351.1

25