**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

In re:

MIRABILIS VENTURES, INC.
Bankruptcy Case No. 6:08-bk-04327-KSJ
Adversary Proceeding No. 6:08-ap-223-KSJ
_____/

MIRABILIS VENTURES, INC.,

    Plaintiff,

v.                                          CASE NO. 6:09-cv-271-Orl-31DAB

RACHLIN COHEN HOLTZ, LLP, a Florida
limited liability partnership n/k/a RACHLIN, LLP;
LAURIE S. HOLTZ, an individual,

    Defendants.
_____/

## PLAINTIFF'S OMNIBUS MOTION *IN LIMINE*

Plaintiff Mirabilis Ventures, Inc., by and through undersigned counsel, hereby files this Omnibus Motion *in Limine*, and respectfully requests this Court to prohibit Defendants Rachlin Cohen Holtz, LLP and Laurie S. Holtz (collectively, "Defendants") from presenting, at the trial of this matter, any argument, testimony or evidence on the following five (5) issues:

    1)    Mirabilis' plea of *nolo contendere* in a prior criminal action and the conviction resulting from said plea;

    2)    Defendants' unpled defense of comparative fault;

    3)    Alleged setoffs based upon other settlements;

    4)    Irrelevant and unduly prejudicial alleged "other acts" by Yaniv Amar ("Amar"); and

5) Reports in the Mirabilis' bankruptcy proceedings, including any periodic reports filed by the bankruptcy trustee and/or President of Mirabilis.

All of these issues relate to matters that are irrelevant, collateral, not probative and unduly prejudicial or which are otherwise barred.

## MEMORANDUM OF LAW

A motion *in limine* seeks an order "prohibiting the opposing party, counsel, and witnesses from offering offending evidence at trial, or even mentioning it at trial[.]" *Mee Industries v. Dow Chemical Co.*, No. 6:05–cv–1520–Orl–31DAB, 2008 WL 874836, at *1 (M.D. Fla. Mar. 27, 2008) (Presnell, J.). "The real purpose of a motion *in limine* is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably effect the fairness of the trial." *Stewart v. Hooters of America, Inc.,* No. 8:04-cv-40-T-17-MAP, 2007 WL 1752843, at *1 (M.D. Fla. June 18, 2007). Thus, a motion *in limine* may be proper "where the evidence at issue is highly prejudicial or inflammatory." *Mee Industries*, 2008 WL 874836, at *1. While Mirabilis recognizes that motions *in limine* are generally disfavored, Mirabilis submits that the evidentiary matters discussed herein present special circumstances, and concern evidence that should not be presented to the jury at all.

    A.    **Evidence of Mirabilis'** *Nolo Contendere* **Plea and Conviction Should be Excluded**

Mirabilis seeks an Order precluding Defendants from presenting evidence of Mirabilis' *nolo contendere* plea, or the resultant conviction of Mirabilis, in the criminal action before this Court styled *United States v. AEM, Inc., et al.*, Case No. 6:08-cr-00231-JA-KRS ("the Criminal Action"). Pursuant to Fed.R. Evid. 410, evidence of a *nolo contendere* plea is not admissible against the party who entered the plea. Defendants appear to acknowledge this in the Joint Final Pretrial Statement, when they indicate that they will not make reference to Mirabilis' *nolo*

2

*contendere* plea. (D.E. 120, at 11)  After conferring with defense counsel prior to filing this Motion, however, it does appear that Defendants will attempt to introduce the fact of Mirabilis' conviction in the Criminal Action pursuant to the *nolo contendere* plea. *See also* Defendants' Exhibit List (D.E. 120-1, at 74 (Ex. 200)) (listing judgment of conviction).  Mirabilis respectfully submits that evidence of that conviction is improper, would unduly prejudice the jury, and cannot possibly be used for any permissible purpose.

According to the Honorable Judge John Antoon II, who presided over the Criminal Action, Mirabilis's *nolo contendere* plea was accepted in order to promote the public interest in the effective administration of justice. *See* Judge Antoon's June 17, 2010 Order (D.E. 149 in the Criminal Action), at 4. Judge Antoon noted that Mirabilis is controlled by Mr. Cuthill who became involved with the company long after the alleged criminal conduct occurred. *Id.*, at 5. Judge Antoon also specifically noted that Mr. Cuthill, lacked sufficient knowledge of facts to support a guilty plea. *Id*. at 5,10. Additionally, Judge Antoon found that accepting the *nolo* plea would facilitate the pursuit of professional malpractice actions, such as the instant case, for the ultimate benefit of innocent creditors. *Id*. at 6. Moreover, the acceptance of the *nolo* plea would allow the maximum chance for the Government to recover on its forfeiture judgment, by permitting cases such as this to proceed. *Id*.

Under the law of this Circuit, it is axiomatic that a conviction based on a *nolo contendere* plea "may not be used as evidence of guilt or for impeachment purposes." *Noell v. Bensinger*, 586 F.2d 554, 556 (5th Cir. 1978)[1]; *Qureshi v. Immigration & Naturalization Service*, 519 F.2d 1174, 1175 (5th Cir. 1975); *see also First National Bank v. First Financial*, 921 F. Supp. 1506, 1508 (E.D. La. 1996) ("In subsequent proceedings, whether arising from the same facts or not,

---

[1] Pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), all decisions of the Former Fifth Circuit were adopted as binding precedent by the Eleventh Circuit.

neither the nolo plea nor the conviction based on the plea may be admitted as an admission or proof of guilt."). Indeed, prohibiting evidence of the *nolo contendere* plea, but allowing evidence of the conviction resulting from that plea, would produce a supremely illogical result and undermine the purposes of Fed. R. Evid. 410. As the Ninth Circuit Court of Appeals succinctly stated in *United States v. Nguyen*,

> Rule 410's exclusion of a *nolo contendere* plea would be meaningless if all it took to prove that the defendant committed the crime charged was a certified copy of the inevitable judgment of conviction resulting from the plea. We hold that Rule 410 prohibits the admission of *nolo contendere* pleas and the convictions resulting from them as proof that the pleader actually committed the underlying crimes charged.

465 F.3d 1128, 1131 (9th Cir. 2006).

It is readily apparent that Defendants intend to introduce evidence of Mirabilis' conviction, pursuant to a plea of *nolo contendere*, either to prove Mirabilis' guilt of the underlying crime or for purposes of impeachment. *See*, *e.g.*, Joint Final Pretrial Statement (D.E. 120), at 11 (Defendants contend that Mirabilis' conviction supports their *in pari delicto* defense); *see also* Defendants' Motion for Summary Judgment (D.E. 63), at 16-19 (asserting that Mirabilis' conviction precludes its claims). In fact, in their Motion for Summary Judgment, Defendants contend that Mirabilis' conviction is admissible, purportedly as evidence of unclean hands. (D.E. 63, at 16).[2] Mirabilis' conviction would be inadmissible for either purpose, and would only serve to distract and unduly prejudice the jury. Accordingly, evidence of Mirabilis' conviction should be excluded.

---

[2] Mirabilis anticipates that Defendants may rely upon the case law cited in their Motion for Summary Judgment for the proposition that Mirabilis' *nolo*-based conviction is admissible. (D.E. 63, at 16-17) These cases, however, are inapposite, because the cases Defendants relied upon all involved questions of admission of a *nolo* conviction in subsequent criminal proceedings, not (as here) civil proceedings.

### B. Defendants Should be Precluded from Presenting Comparative Fault Evidence, as this Unpled Affirmative Defense Has Been Waived

In the Joint Final Pretrial Statement, Defendants revealed, for the first time, that they intend to attempt to introduce evidence regarding the alleged comparative fault of non-parties to this action. (D.E. 120, at 9) Similarly, throughout their proposed jury instructions, Defendants seek to have the jury instructed on comparative fault. (D.E. 121) Defendants, however, failed to plead comparative fault as an affirmative defense, and have thus waived this defense. Accordingly, Defendants must be precluded from presenting any evidence regarding comparative fault.

Under both Florida and federal law, comparative fault is an affirmative defense. Under Florida law, a defendant must affirmatively plead the existence and identity of a nonparty *Fabre* actor who is alleged to be comparatively at fault. *Nash v. Wells Fargo Guard Services, Inc.*, 678 So. 2d 1262, 1264 (Fla. 1996). With respect to federal law, although comparative negligence is not specifically enumerated as an affirmative defense under Fed. R. Civ. P. 8(c), it is generally treated as such under the Rule's "catch-all" provision. *See Sachi v. Labor Ready Southeast, Inc.*, No. 09-82388-CIV-MARRA, 2010 WL 3259916, at *2 (S.D. Fla. Aug. 18, 2010) (referring to "the proper affirmative defense of comparative negligence"); *see also* Am. Jur. Pleadings § 307; *Carter v. United States*, 333 F.3d 791, 796 (7th Cir. 2003) (Posner, J.) (citing Rule 8(c)); *F.D.I.C. v. Niblo*, 821 F. Supp. 441, 454 (N.D. Tex. 1993) (same); *Marino v. Otis Engineering Corp.*, 839 F.2d 1404, 1406 n.3 (10th Cir. 1988) (same). Accordingly, under either analysis, comparative fault is an affirmative defense that must be pled, or it is deemed waived.

As referenced above, Florida's comparative fault statute imposes additional pleading requirements on defendants seeking to assign fault to nonparty *Fabre* defendants. Specifically, in order to allocate fault to a nonparty, "a defendant must affirmatively plead the fault of a

5

nonparty and, absent a showing of good cause, identify the nonparty, if known, or describe the nonparty as specifically as practicable, either by motion or in the initial responsive pleading when defenses are first presented." Fla. Stat. Stat. § 768.81(3)(a). There can be no dispute that Defendants failed to plead comparative fault in any form, much less in accordance with the statute.[3]

In response to Mirabilis' objections to Defendants' proposed jury instructions, Defendants claim to have pled comparative fault, and point to Paragraphs 6 through 8 of their affirmative defenses. (D.E. 53, 54) Even a cursory review of those paragraphs, however, demonstrates that Defendants' pleadings do not come close to meeting the requirements of the statute or placing Plaintiff on fair notice that Defendants were attempting to assert such a significant defense.

For example, in Paragraph 6 of their Answer, Defendants simply assert that they "relied on other professionals," not that such professionals were at fault or are liable to Mirabilis. (D.E. 53, at 8; D.E. 54, at 7-8) In Paragraph 7, Defendants contend that Mirabilis' damages were

---

[3] In response to Mirabilis's objections to their proposed jury instructions, Defendants assert that the pleading requirements of Fla. Stat. § 768.81(3) are non-substantive and thus do not apply to this action. In support of this position, Defendants cite to three inapposite federal cases, all of which concern Florida's procedural punitive damages statute and its conflict with Rule 8(c). Mirabilis anticipates that Defendants will make a similar argument in response to this Motion, but the argument completely misses the mark. In simplest terms, the conflict between Florida's punitive damage statute and the federal rules arises because Florida law forbids the pleading of punitive damages before the record is developed, while Rule 8(c) requires that punitive damages be pled from the outset. There is no such conflict between the federal rules and the pleading requirements of Fla. Stat. § 768.81(3). As Defendants' own case law makes clear, the relevant issue "is not whether the state law provision is procedural or substantive; instead, the court must ask whether the state law provision conflicts with a federal procedural rule. If it does, the federal procedural rule applies and the state provision does not." *Pelican Engineering Consultants, Inc. v. Sheeley*, 2000 WL 1215397, at *3 (M.D. Fla. July 11, 2000) (internal citations omitted) (cited by Defendants at D.E. 121, *passim*). Given that no conflict exists, the pleading requirements of § 768.81(3) are unquestionably applicable, and they have not been remotely satisfied in this case.

caused by Mirabilis itself – this is a contributory negligence allegation, not a comparative fault defense implicating a *Fabre* actor. *Id.* Finally, in Paragraph 8, Defendants refer vaguely to "third parties over whom Rachlin had no control," failing to identify any such third party other than Mr. Amodeo – whose conduct Defendants have continuously sought to impute to Mirabilis (even doing so a mere four paragraphs earlier, in affirmative defense #4).[4] Otherwise, Paragraph 8 only refers to unnamed "co-conspirators," and makes a cryptic allusion to "those who had knowledge of and participated in the criminal scheme described in the Second Amended Complaint." *Id.* Defendants' ill-defined and non-specific references to unidentified third parties are not nearly sufficient to meet the pleading standards of Fla. Stat. § 768.81(3), and requires the conclusion that the affirmative defense of comparative fault has not been properly pled by Defendants. *See Bogosian v. State Farm Mutual Automobile Insurance Co.*, 817 So. 2d 968, 970-71 (Fla. 3d DCA 2002) ("The pleadings must be perfected to give the plaintiff fair notice that the defendant intends to try to prove culpability on the part of a nonparty Fabre defendant…the prejudice to plaintiff arises because, in the absence of a pleading creating fair notice, plaintiff had no opportunity to plan a defense or gather evidence and witnesses in opposition to [defendant's] position."). Indeed, Defendants' proposed instruction and statement that unknown Mirabilis employees are at fault (D.E. 121, at 79) leaves Plaintiff and the jury guessing as to the identity of these unidentified persons.

It is well-settled that failure to plead an affirmative defense results in the waiver of that defense and its exclusion from trial. See *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277,

---

[4] To the extent that Defendants seek to shift fault and/or liability onto any Mirabilis employees, any conduct of such employees would necessarily be imputed to Mirabilis itself, and would raise principles of contributory negligence, not comparative fault. Even so, however, Defendants have completely failed to specifically identify even one such employee in their pleadings, as required under *Fabre*, making their pleadings defective on this score as well.

1286 (11th Cir. 2000) (affirming district court that refused to instruct the jury on mitigation of damages because it was not pled as an affirmative defense and was thus waived); *Caban-Wheeler v. Elsea*, 71 F.3d 837, 841 (11th Cir. 1996) (affirmative defense not raised was waived); *Kennan*, 717 F. Supp. at 808 ("As a general rule, if a party fails to raise an affirmative defense in its pleadings, that party waives its right to raise the defense at trial."); *see also Strauss v. Douglas Aircraft Co.*, 404 F.2d 1152, 1158 (2d Cir. 1968) (reversing district court for *granting* leave to amend to add a statute of limitations defense too far along in the litigation). Perhaps if Defendants had to answer but one complaint or this matter had proceeded on an expedited track, Defendants' omission might be understandable, but Defendants have filed four (4) Answers between them, never once hinting at the comparative fault argument. Accordingly, because Defendants completely failed to properly plead the affirmative defense of comparative fault, they must be barred from introducing any evidence regarding **that** defense at trial.

### C. Evidence of Setoffs are Precluded by Defendants' Failure to Plead this Affirmative Defense and by FRE 408

Defendants seek to introduce evidence regarding other monies received by Mirabilis, in an attempt to apply those monies as a setoff to any damages awarded to Mirabilis. There are two categories of setoffs Defendants seek to rely upon: evidence of alleged benefits received by Mirabilis (true setoff), and evidence of Mirabilis' settlements with third parties (collateral source setoffs). Evidence regarding both categories, however, must be excluded from the jury. With respect to true setoffs, Defendants never pled setoff as an affirmative defense, and have thus waived it. With respect to collateral source setoffs, evidence of any such collateral sources may not be presented to the jury.

The first category Defendants seek to introduce evidence on is that of true setoffs – actual funds alleged to have been received by Mirabilis. Defendants contend that their failure to plead

setoff does not bar them from presenting this evidence. (D.E. 120, at 19) Defendants' argument is simply incorrect, as setoff is an affirmative defense that must be specifically pled. *See Kentish v. Madahcom, Inc.*, 566 F. Supp. 2d 1343, 1350 (M.D. Fla. 2008) (Moody, J.) (referring to "affirmative defense of setoff"); *see also Demezier v. Ravede Insurance Agency, Inc.*, No. 09-60777-CIV-ALTONAGA, 2010 WL 680837, at *2 (S.D. Fla. Feb. 18, 2010) (granting plaintiff's motion for summary judgment due to defendant's failure to plead "affirmative defense of setoff"). As discussed extensively in Section B, *supra*, failure to plead an affirmative defense results in the waiver of that defense and its exclusion from trial. Accordingly, any argument, testimony or evidence proffered by Defendants as to "true setoffs" must be excluded due to Defendants' failure to plead this affirmative defense.

With respect to collateral source setoffs, according to the Joint Final Pretrial Statement, among the "issues of fact" remaining to be litigated is whether Defendants are entitled to a "set-off" as a result of settlements reached between Mirabilis and James Moore & Co. and/or Berman, Kean & Riguera, P.A. (D.E. 120, at 19) Pursuant to Fed.R. Evid. 408, however, settlements and settlement offers are inadmissible to prove liability or amount of damages. This rule "has been held applicable to situations involving settlements between one of the parties and a third party, where such settlements have arisen out of the same transaction that is in dispute." *Dallis v. Aetna Life Insurance Co.*, 768 F.2d 1303, 1306 (11th Cir. 1985); *see also Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.*, 468 F. Supp. 414, 432 n.10 (S.D.N.Y. 1980) (FRE 408 extends the exclusion of settlement evidence to completed settlements when offered against the settling party); *Jackson v. Shell Oil Co.*, 401 F.2d 639, 643 (6th Cir. 1968) (plaintiff was not entitled to introduce evidence of defendant's settlement with another party to same accident).

Indeed, any evidence regarding settlements reached by Mirabilis with other parties is irrelevant to any issue that would be within the province of the jury, as any collateral source set-off to a jury verdict would be determined by the Court. *See*, *e.g.*, *KMS Restaurant Corp. v. Wendy's International, Inc.*, 194 Fed. Appx. 591, 598 (11th Cir. 2006) (in tort actions under Florida law, collateral source set-off "is not an affirmative defense to be considered by the jury but is a determination regarding damages to be made by the court after the verdict is rendered."); *Kearney v. Auto-Owners Insurance Co.*, No. 8:06-cv-595-T-24, 2007 WL 3124879, at *2 (M.D. Fla. Oct. 24, 2007) (Bucklew, J.) (court would consider set-off after jury returned its verdict); *see also* Fla. Stat. §§ 46.015(3) and 768.041(3) (stating that the fact of another party's release must not be made known to the jury). As such, any evidence regarding collateral source setoffs should be excluded, and not presented to the jury. *See Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1364 (10th Cir. 1987) ("when the issue is doubtful, the better practice is to exclude evidence of compromises or compromise offers.").

Moreover, evidence related to these completed or in progress settlements relate to truly collateral matters. If Defendants are permitted to introduce evidence of Mirabilis' settlement with its auditors, Plaintiff will be forced to elicit testimony relating to the nature of that claim, the nature of the auditor's defenses, the collectability of any judgment and the litigation pressures that invariably cause settlements. Indeed, Plaintiff would be forced to testify at length about the auditor's insurance policies – testimony that will surely introduce the specter of insurance into this action. Clearly, these are collateral matters that should not be aired before the jury.

### D. Evidence of So-Called "Other Bad Acts" of Yaniv Amar Should be Excluded as Irrelevant and Unfairly Prejudicial

One of the likely witnesses at the trial of this case will be Yaniv Amar, the former Interim CEO of AEM, Inc., a subsidiary of Mirabilis. During Mr. Amar's deposition, Defendants elicited testimony regarding several unrelated transactions involving Mr. Amar, including the purchase of Mr. Amar's residence and an investment made by a company that is not a party to this action. (Deposition of Mr. Amar, at 311-58) Defendants' clear intent was to portray Mr. Amar as Frank Amodeo's "stooge," a repugnant description that Defendants have used on several occasions. Presumably, Defendants will seek to introduce evidence regarding these wholly unrelated transactions in order to discredit Mr. Amar by distracting the jury with allegations of purported "other bad acts." Any such evidence, however, should be excluded as irrelevant, or alternatively as unduly prejudicial in relation to its nonexistent probative value.

First and foremost, any evidence regarding alleged unrelated "bad acts" by Mr. Amar should be excluded as irrelevant under Rule 402. During Mr. Amar's deposition, Defendants attempted (ultimately in vain) to obtain Mr. Amar's admission that he purchased his residence in Aventura, Florida with money obtained from Mr. Amodeo, apparently without consideration. Mr. Amar testified repeatedly that he did not recall the details of the transaction, and in any event **this transaction was unrelated to Mirabilis** and certainly has nothing to do with Mirabilis' claims against Defendants. Similarly, with respect to the purported investment of approximately $1 million, Mr. Amar testified that the investment was made by a different entity and was unrelated to Mirabilis in any way. Thus, this evidence is wholly irrelevant to the claims and defenses that will be presented to the jury, and should be excluded on that basis alone.

Even assuming, however, that the Court determines that this evidence is somehow relevant to an issue in the case, it should be excluded pursuant to Rule 403, as its minimal

probative value is substantially outweighed by the danger of unfair prejudice, confusion of the jury, and unnecessary litigation of collateral issues. As noted above, Mr. Amar's testimony establishes that neither of these so-called events had anything to do with Mirabilis, and there is no indication that they relate in any way to Defendants' conduct. Defendants' only possible purpose for introducing this evidence would be to attempt to discredit Mr. Amar in the eyes of the jury, an impermissible reason to introduce what is at best tangentially relevant information. *See Chrysler Int'l Corp. v. Chemaly*, 280 F.3d 1358, 1364 (11th Cir. 2002) (even if evidence of other alleged fraud by defendant was relevant, such relevance was outweighed by unfair prejudicial effect of allegations); *Goulah v. Ford Motor Co.*, 118 F.3d 1478, 1484 (11th Cir. 1997) (upholding exclusion of evidence regarding unrelated investigation as unduly prejudicial). Defendants may also seek to introduce this evidence in a misguided attempt to show some bias by Mr. Amar in favor of Mr. Amodeo, but this evidence is hardly probative of any such bias. *See Park West Radiology v. Carecore National LLC*, 675 F. Supp. 2d 314, 323 (S.D.N.Y. 2009) (excluding evidence that was "only nominally probative of bias" and could "elicit a strong negative reaction from the jury for reasons not at all relevant to this litigation."). Significantly, Mr. Amodeo is not a party to this action and even were Mr. Amar biased toward Mr. Amodeo, such bias would have zero relevance to this action or any impact on his credibility in this action.[5]

Additionally, any reference to this irrelevant evidence would likely confuse the jury and result in the unnecessary litigation of collateral issues having nothing to do with the claims and defenses at issue. A matter is considered collateral if "the matter itself is not relevant in the litigation to establish a fact of consequence, i.e., not relevant for a purpose other than mere

---

[5] This Court has previously acknowledged that the pursuit of this and similar professional malpractice actions is not intended to benefit Mr. Amodeo in any way. *See* April 21, 2010 Order (D.E. 30) in *In re Mirabilis Ventures, Inc.*, No. 6:09-cv-01658-GAP.

contradiction of the in-court testimony of the witness." *United States v. Beauchamp*, 986 F.2d 1, 4 (1st Cir. 1993) (quoting 1 MCCORMACK ON EVIDENCE § 45); *see also Blancha v. Raymark Industries*, 972 F.2d 507, 516 (3d Cir. 1992) ("evidence may be excluded when its admission would lead to litigation of collateral issues, thereby creating a side issue which might distract the jury from the main issues."). Issues regarding Mr. Amar's personal residence and the unsuccessful investments made by an unrelated non-party company are clearly collateral issues, designed to distract the jury from Defendants' serious misconduct. Accordingly, any such evidence should be excluded from the trial of this matter.

### E. Evidence of Subsequent Bankruptcy Court Filings by Mirabilis Should be Excluded as Irrelevant Collateral Issues

As this Court is aware, Mirabilis was placed into Chapter 11 bankruptcy protection on May 27, 2008. As a result, Mr. Cuthill is required to file periodic status reports setting forth various matters, including amounts paid to attorneys and other professionals. The information contained in these reports relates solely to matters that arose after Mirabilis entered bankruptcy, and thus have absolutely nothing to do with any of the claims or defenses in this action. Introduction of these reports, or any other information related to the ongoing bankruptcy proceedings, is only likely to confuse the jury and lead them down various rabbit holes of collateral and unrelated issues. Accordingly, Defendants should be precluded from introducing any evidence relating to the bankruptcy proceedings. *See* Section D, supra; *see also Hines v. Brandon Steel Decks, Inc.*, 886 F.2d 299, 302 (11th Cir. 1989) (public reports may be excluded if the court finds that they are irrelevant or that they are more prejudicial than probative). Those monthly reports will reveal how much certain law firms have been paid; an issue that is purely collateral and may be unduly prejudicial.

During conferral, it became apparent that Defendants' interest in these reports as evidence has arisen solely because the reports contain information regarding the compensation of R.W. Cuthill, the President of Mirabilis.  Apparently, Defendants take the view that Mr. Cuthill's compensation for performing his job duties is somehow relevant to his motivation for bringing this action, which Defendants contend is Mr. Cuthill's own self-enrichment.  Even if Defendants' farfetched and desperate accusation were remotely connected to the truth, which is denied, evidence of Mr. Cuthill's compensation is plainly irrelevant.  Defendants admittedly seek to introduce this information solely to inflame the passions of the jury, not to prove any of their defenses or to attack any of Plaintiff's claims.  Defendants should be precluded from introducing this evidence for this concededly improper purpose.  Permitting this evidence would be akin to allowing the jury to learn about the compensation of an attorney operating under a contingent fee agreement in a personal injury case, which would immediately cause a mistrial.  That unnecessary outcome should be avoided here by the preclusion of this evidence.

## CONCLUSION

For the foregoing reasons, Mirabilis respectfully requests this Court to grant its Omnibus Motion *in Limine*, and to grant any further relief deemed just and proper.

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 3.01, undersigned counsel contacted counsel for Defendants prior to filing this Motion, in an effort to reach agreement on the issues raised herein, but the parties were unable to agree.

Dated: May 30, 2011.

BROAD AND CASSEL
Attorneys for Plaintiff, Mirabilis Ventures, Inc.
390 N. Orange Avenue, Suite 1400
Orlando, FL 32801
Telephone: 407-839-4200
Facsimile: 407-324-4377

By: __*s/Todd K. Norman*__
    Mark F. Raymond, P.A.
    Florida Bar No. 373397
    Rhett Traband, P.A.
    Florida Bar No. 028894
    Todd K. Norman, P.A.
    Florida Bar No. 062154
    Bernard H. Gentry
    Florida Bar No. 57649
    Michael A. Shafir
    Florida Bar No. 0660671
    trnoman@broadandcassel.com
    bgentry@broadandcassel.com
    mraymond@broadandcassel.com
    rtraband@broadandcassel.com
    mshafir@broadandcassel.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished this 30th day of May, 2011 via CM/ECF to all parties receiving electronic service.

By: __s/ Michael A. Shafir__
    Michael A. Shafir, Esq.