# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

IN RE:  MIRABILIS VENTURES, INC.,
**Bankruptcy Case No. 6:08-BK-4327**

_____

**MIRABILIS VENTURES, INC.,**

**Plaintiff,**

**-vs-**                                                      **Case No.  6:09-cv-271-Orl-31DAB**

**RACHLIN COHEN & HOLTZ, LLP and
LAURIE S. HOLTZ,**

**Defendants.**

_____

## ORDER

   This matter comes before the Court on the Omnibus Motion in Limine (Doc. 136), filed by

the Plaintiff, Mirabilis Ventures, Inc. ("Mirabilis"), and the response in opposition (Doc. 138) filed

by the Defendants.  Mirabilis seeks to preclude the introduction of evidence in regard to five

issues: its plea of *nolo contendere* and resulting conviction on charges of conspiracy and wire

fraud; the Defendants' allegations of comparative fault; Defendants' purported entitlement to a

setoff; certain acts undertaken by one of the Plaintiff's witnesses, Yaniv Amar; and reports filed in

the company's bankruptcy proceedings, including periodic reports filed by the Trustee and the

company's president.

## I.  Background

   Mirabilis was one of a web of entities that played a role in a scheme by Frank Amodeo

("Amodeo") to misappropriate payroll taxes that should have been paid over to the Internal

Revenue Service.  The scheme involved professional employer organizations ("PEOs"), which provided human resources and payroll services to client companies.  The PEOs would, among other services, calculate the payroll taxes that ought to be withheld from the paychecks of each client company's employees.  The PEOs would then collect those sums from the client companies. Rather than being turned over to the IRS, as the law required, the funds would be diverted to other ends, including funding operations of Amodeo-linked businesses or buying real estate, vehicles and other property.  Mirabilis owned a number of companies in various lines of business.[1]  One of its subsidiaries, AEM, Inc. ("AEM"), owned two of the PEOs whose payroll tax funds were diverted pursuant to Amodeo's scheme.

On September 23, 2008, Amodeo pled guilty to a number of felonies, including a failure to collect and remit payroll taxes.  He was sentenced to 22 and a half years in prison and ordered to pay restitution to the IRS of approximately $180 million.  After originally pleading guilty, Mirabilis was permitted to plead *nolo contendere* to charges of conspiracy and wire fraud.  (Doc. 149 in Case No. 6:08-cr-231).  The company has been ordered to pay restitution in the amount of $200 million as a consequence of the role it played in Amodeo's scheme.  The government holds an allowed claim in that amount against Mirabilis' bankruptcy estate, and Mirabilis seeks to recover that $200 million as damages in the instant suit.

---

[1]According to the indictment in Amodeo's criminal case, Mirabilis was a company that "specialized in acquisitions of and mergers with other businesses in various industries" and by late 2006 had "grown to be a conglomerate of approximately 70 companies involved in various industries, including consulting, corporate security, employee leasing and hotel ownership."  (Doc. 1 in Case No. 6:08-cr-176 at 7-8).

The instant suit was brought at the direction of R.W. Cuthill ("Cuthill"), who was appointed as president of Mirabilis in May 2008 and is currently overseeing recovery of assets and liquidation of the company.  (Doc. 139 at 1 in Case No. 6:08-cr-231).  Mirabilis contends that the Defendants negligently failed to provide warnings that Amodeo's scheme violated the law, resulting in the company being held liable for $200 million in damages as a result of its conviction. In Mirabilis's criminal case, the Honorable John Antoon II stated (and all parties to the instant case agree) that Cuthill was not involved with Mirabilis or the other companies involved in Amodeo's scheme while the criminal conduct was occurring.  (Doc. 149 at 5 in Case No. 6:08-cr-231).

**Legal Standard**

The term "*in limine*" has been defined as "on the threshold; at the very beginning; preliminarily." *Luce v. U.S.*, 469 U.S. 38, 40, 105 S.Ct. 460, 462, 83 L.Ed.2d 443 (1984) (citing Black's Law Dictionary 708 (5th ed. 1979)).  A motion *in limine* seeks a protective order prohibiting the opposing party, counsel, and witnesses from offering offending evidence at trial, or even mentioning it at trial, without first having its admissibility determined outside the presence of the jury.  75 Am. Jur. 2d Trial § 39 (2008).  A motion *in limine* may be proper where the evidence at issue is highly prejudicial or inflammatory; where the evidentiary issue is significant and unresolved under existing law; where the issue involves a significant number of witnesses or volume of material, making it more economical to have it resolved prior to trial; or where the movant does not wish to object in the presence of the jury.  *Id.*  Motions *in limine* are disfavored; admissibility questions should ordinarily be ruled upon as they arise at trial.  *Stewart v. Hooters of America, Inc.*, 2007 WL 1752843 at *1 (M.D.Fla. 2007).  Accordingly, if evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial to allow questions of foundation,

relevancy, and prejudice to be resolved in context.  *Id.*  Denial of a motion *in limine* does not

insure that the evidence contemplated by the motion will be admitted at trial.  Instead, denial of the

motion means the court cannot determine whether the evidence in question should be excluded

outside the trial context.  *U.S. v. Connelly*, 874 F.2d 412, 420 (7th Cir. 1989).  A district judge is

free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling, even if nothing

unexpected happens at trial.  *Luce*, 469 U.S. at 41, 105 S.Ct. at 463.

## II.      Analysis

### A.       Nolo Contendere Plea and Conviction

Federal Rule of Evidence 410 provides that, with certain exceptions not applicable here,

evidence of a plea of *nolo contendere* is not admissible in any civil or criminal proceeding against

the defendant who made the plea.  Mirabilis also seeks to employ Rule 410 to preclude admission

of any evidence of the conviction resulting from that *nolo* plea.  The Defendants respond that they

do not intend to offer evidence of the plea itself, and therefore the motion will be denied as moot

as to that point.  However, the Defendants argue that Rule 410 does not bar evidence of Mirabilis'

conviction.

Within this Circuit, Rule 410 does not bar introduction of evidence of a conviction

resulting from a *nolo contendere* plea. *See United States v. Williams*, 642 F.2d 136, 139 (5th Cir.

April 8, 1981)[2] (permitting introduction of evidence of fact of conviction for purposes of

impeachment under Federal Rule of Evidence 609, and noting that "[o]nce convicted, whether as a

---

[2]All decisions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent on courts within the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

result of a plea of guilty, *nolo contendere*, or of not guilty (followed by trial), convictions stand on

the same footing, unless there be a specific statute creating a difference."). Thus, insofar as the

fact of the conviction is to be offered for purposes of impeachment, it is clearly admissible.

Even if the Defendants sought to introduce evidence of the conviction for purposes other

than impeachment, Rule 410 would not necessarily bar its use in this case. As stated by the

Advisory Committee, Rule 410 "gives effect to the principal traditional characteristic of the *nolo*

plea, i.e. avoiding the admission of guilt which is inherent in pleas of guilty." Fed. R. Evid. 410

advisory committee's note. Courts generally note two primary reasons behind the practice of

holding *nolo* pleas inadmissible: First, although such a plea has the same *legal* effect as a guilty

plea, it is not a *factual* admission in regard to the underlying crime, and second, the exclusion of

such pleas encourages compromise resolution of criminal cases. *Rose v. Uniroyal Goodrich Tire

Co.*, 219 F.3d 1216, 1220 (10th Cir. 2000) (citing *Walker v. Schaeffer*, 854 F.2d 138, 143 (6th Cir.

1988)). However, both of these justifications assume a scenario in which the criminal defendant

"is being sued in a later civil action, and the plea is offered as proof of guilt." *Id.* When the issue

arises in a different scenario – as it has in the instant case – Rule 410 does not necessarily apply.

As an example, in *Rose*, the plaintiff's employer had a zero-tolerance drug policy. *Id.* at

1218. The plaintiff was fired as a result of his conviction on a misdemeanor drug possession

charge. *Id.* at 1218-19. The former employee then sued for wrongful termination and, because his

conviction was based on a *nolo* plea, sought to prevent his employer from introducing evidence of

it. *Id.* at 1219. The district court refused to exclude the evidence, stating that "to permit Plaintiff

to proceed at trial unchecked by the realities of the circumstances leading to his termination is

simply unjust and will not be permitted." *Id.* at 1220. The appellate court affirmed, noting that the

case before it, which had been brought by the convicted party, fell outside the area where Rule 410 was intended to apply, adding: "We will not construe . . . Rule 410 . . . to allow an employee plaintiff to affirmatively prevent an employer from presenting the very evidence used as a basis for its termination decision.  Such a result would unfairly hogtie the employer and lead the jury to believe the employee's termination was groundless." *Id.*

Similarly, in the instant case, it is the convicted party that filed suit.  Moreover, it is Mirabilis that has injected the issue of its conviction into this dispute – indeed, made it the very foundation of this dispute – by claiming, as damages, the $200 million it was ordered to pay as a result of its conviction.  It would be unjust (and likely incomprehensible to a jury) to allow Mirabilis to attempt to shift responsibility for the financial consequences of its conviction onto the Defendants without them being able to even mention the conviction itself.

Finally, the instant case is unusual in that the party seeking to employ Rule 410 is a corporation – and, more particularly, a corporation that is now being controlled by people who had nothing to do with the criminal conduct that resulted in the conviction.  Under these circumstances, the negative effect on Mirabilis resulting from the jury's knowledge of the conviction would be greatly reduced, if not entirely eliminated, when compared to the traditional situation involving an *individual* convicted of a crime.  Thus Rule 410 is not needed in this case to "give[] effect to the principal traditional characteristic of the *nolo* plea, i.e. avoiding the admission of guilt which is inherent in pleas of guilty."  Fed. R. Evid. 410 advisory committee's note.

For all these reasons, the motion will be denied as to the fact of Mirabilis' conviction.

**B.** **Comparative Fault**

The Plaintiff argues that the Defendants should be precluded from introducing evidence as to the comparative fault of non-parties on the grounds that the Defendants failed to properly plead this affirmative defense.  The parties dispute whether the Court ought to apply the restrictive pleading standard set forth in Florida's comparative fault statute, Fla. Stat. § 768.81, or the general notice pleading standard of Fed.R.Civ.P. 8(a).  However, the Court need not resolve that disagreement, because the Defendants have satisfied the more stringent standard set forth under Florida law.

In pertinent part, Florida's comparative fault statute provides that

In order to allocate any or all fault to a nonparty, a defendant must affirmatively plead the fault of a nonparty and, absent a showing of good cause, identify the nonparty, if known, or describe the nonparty as specifically as practicable, either by motion or in the initial responsive pleading when defenses are first presented, subject to amendment any time before trial in accordance with the Florida Rules of Civil Procedure.

Fla. Stat. § 768.81(3)(a).[3]   In their affirmative defenses, both Defendants assert that the Plaintiff's damages "were caused by the intentional criminal misconduct, recklessness and/or negligence of third parties over whom [they] had no control, including Amodeo . . . his co-conspirators, and those who had knowledge of and participated in the criminal scheme described in the Second Amended Complaint."  (Doc. 53 at 8, Doc. 54 at 7-8).  Clearly, these statements qualify as affirmative pleadings of the fault of various nonparties.  In addition, Amodeo is specifically

---

[3]The statute goes on to establish a separate threshold for including a nonparty's name on the verdict form: "In order to allocate any or all fault to a nonparty and include the named or unnamed nonparty on the verdict form for purposes of apportioning damages, a defendant must prove at trial, by a preponderance of the evidence, the fault of the nonparty in causing the plaintiff's injuries."  Fla. Stat. § 768.81(3)(b).

identified, satisfying the statute on that front.  The Defendants also seek to have the jury consider

the fault attributable to the following nonparties: Amodeo's alleged front man, Yaniv Amar;

another accounting firm, James Moore & Company; and Mirabilis' former chief financial officers,

Paul Glover and Dan Myers.  (Doc. 138 at 5).  None of these individuals or entities were

specifically identified in the Defendants' pleadings.  But their identities are obviously well known

to the Plaintiff, which has itself sued James Moore & Company (perhaps among others) on claims

very similar to those of the instant case.  In addition, the Plaintiff learned well in advance of trial

that the Defendants intend to point the finger at these other nonparties.  Given these facts, the

Defendants' pleadings are sufficient to permit them to assert a comparative negligence defense at

trial.  The motion will therefore be denied insofar as it seeks to bar evidence in regard to the

Defendants' defense of comparative negligence defense.

    **C.**    **Setoff**

    Mirabilis argues that the Defendants should not be permitted to introduce evidence

regarding two categories of setoffs: benefits allegedly received by the company during the criminal

scheme and benefits received due to the company's settlements with third parties.  The Defendants

reply that they have no plans to introduce evidence on either score to the jury.  Accordingly, the

motion will be denied as moot on this issue.  Any setoff issues will be dealt with by the Court after

the verdict.

    **D.**    **Alleged Bad Acts Evidence**

    The Defendants intend to introduce evidence regarding Amodeo's financing of Amar's

residence and an investment made through Amar by a nonparty company purportedly controlled by

Amodeo.  Out of context, the Court cannot determine whether these transactions are relevant to

this case, or whether the probative value of this evidence is substantially outweighed by the danger

of unfair prejudice.  The motion will be denied without prejudice as to these transactions and

should be made at trial.

E.     **Cuthill Financial Statement**s

Mirabilis objects to the Defendants' efforts to introduce the periodic financial reports filed

in Mirabilis' bankruptcy proceedings.  Mirabilis argues that the reports recount the compensation

paid to attorneys and to its president, R.W. Cuthill, and that this information is not relevant to

these proceedings.  The Defendants disclaim any intention of introducing evidence of

compensation paid to Mirabilis' attorneys during the pendency of the bankruptcy; accordingly, the

motion will be denied as moot on that issue.  However, all parties expect Cuthill to testify at the

upcoming trial.  As such, his financial interest in this litigation (which appears to include a

percentage of any recovery in this matter) is classic impeachment evidence.  "The partiality of a

witness is subject to exploration at trial, and is always relevant as discrediting the witness and

affecting the weight of his testimony."  *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110,

39 L.Ed.2d 347 (1974).  *See also BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 955 F.2d

1467, 1474 (11th Cir. 1982) (where witness had extensive financial interest in BankAtlantic,

evidence of that interest was admissible to show bias because witness "clearly had a stake in the

outcome of the litigation.").

The motion will be denied as to this point.

III.     **Conclusion**

In consideration of the foregoing, the Omnibus Motion in Limine (Doc. 136) is **DENIED**

as to evidence of Mirabilis' conviction, the comparative negligence defense, and the financial

interest of R.W. Cuthill; **DENIED AS MOOT** as to evidence of Mirabilis' *nolo contendere* plea,

setoffs and the compensation paid by Mirabilis to its attorneys during the bankruptcy; and

**DENIED WITHOUT PREJUDICE** as to the transactions involving Yaniv Amar.

      **DONE** and **ORDERED** in Chambers, Orlando, Florida on June 8, 2011.

_____

GREGORY A. PRESNELL<br>
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record<br>
Unrepresented Party